J. W. (DUB) ADAMS V. STATE

No. 33,846.   November 29, 1961
State's Motion for Rehearing Overruled January 24, 1962

WOODLEY, Presiding Judge, dissented.

McDONALD, Judge, concurred.

*James F. Fanning,* Comanche, for appellant.

*Leon Douglas,* State's Attorney, Austin, for the state.

McDONALD, Judge.

Appellant was convicted in the district court of Comanche County for robbery by assault. His punishment was assessed at confinement in the penitentiary for eighteen years. This is a companion case to Cause No. 33,771, Curtis Lee Adams, 354 S.W. 2d 147, this day reversed because the evidence was insufficient to sustain the conviction for the offense of robbery by assault, and also on account of jury misconduct.

The state's evidence reflects that two elderly sisters, Lona and Hester Anderson, had in excess of $15,000 taken from them on the night in question, most of which money was recovered. The facts briefly summarized show that the two sisters resided alone out from the city of Comanche; that they heard some men talking outside the house; that one of the men asked where Shoemaker lived; that they (the sisters) tried to go to Mr. Goosby's house; that the men just "herded" them around; that Lona Anderson was carrying a lard bucket with all the money they had in it; that a man would not let them go where they wanted to go.

The following is taken from the testimony of the state's witness, Lona Anderson, who was named in the indictment as being the person robbed:

"Q. Were you in fear of your life, Miss Lona? Were you? A. I think so.

\* \* \* \*

"Q. Did he take the bucket away from you? A. He just *taken* it out of my arms.

"Q. Just pulled it out of your arms——. A. And went off and never said a word.

'Q. You didn't give it to him, he took it from you? A. Yes, sir.

"Q. Did he make any threatening gestures at you, like he was going to hit you or anything? A. No, sir.

"Q. You didn't give up the bucket because you were afraid, Miss Lona, he just took the bucket out of your hands without saying a word, and without touching you? A. That's what he *done*.

\* \* \* \*

"Q. Pulled it away from your arm? Were you afraid *of* your life out there when this happened? A. I was scared so bad, I couldn't think."

The testimony adduced from the state's witness Hester Anderson reflects:

"Q. All right. Did any of these men ever come over to you? A. That one did that night and *come* around and asked me— he didn't ever speak to me and I asked him what he was doing there, just like I could have bit his head off, and he wouldn't answer me and Lona said 'Shoot him, Hester,' and I reckon he thought I had a gun, he showed me his gun, he put it in his hand and laid it by his belt up here and showed it to me.

"Q. All right. Now, did this man let you all walk wherever you wanted to walk out there? A. No, sir. When I'd start, he'd go around me and stop me.

"Q. Just kinda herded you around, huh?

\* \* \* \*

"Q. What did he finally do, then? A. He turned around and grabbed the bucket away from Lona, and sort of shook her as she passed \* \* \*."

This same witness further testified:

"Q. Was it dark that night? A. Certainly was. I couldn't tell, if I'd *of knowed* 'em, who it was hardly. It was so dark."

In viewing the evidence as a whole, we find, again reviewing the testimony of the state's witness Lona Anderson, that she said:

"We started and *they* was one met us around there, just herded us around."

This witness, the one who was alleged to have been robbed, never at any time testified that she even saw the pistol that her sister testified to seeing. She testified:

"Hester said he pulled out a pistol in his arm, I didn't notice it, I was so—.

"Q. Did he scare you, Miss Lona? A. You ought to ask me how bad.

"Q. He did scare you? A. Yes, sir, and if I'd had a gun in my hand I'd have shot him."

As previously stated, this same witness only stated, "I think so," when asked if she were in fear of her life.

The witness Hester Anderson further testified on cross-examination that the pistol was not pointed at her; that she did not know whom she was talking about when she said "he." She further testified that nobody touched either her or her sister. On re-direct she was asked:

"Q. Miss Hester, you testified awhile [sic] they pushed Lona, isn't that right? A. Well, they jerked that plum hard. She was holding it tight. She was scared until she didn't have no mind, and I was too, but I could hold up to talk a little, and they sorta jerked her, she was holding it so tight * * *.

"Q. Were you scared ? A. Certainly was."

The indictment charged and the appellant was convicted of robbing Lona Anderson by an assault and by violence and putting her in fear of life and bodily injury.

Having carefully reviewed the evidence, we have concluded that the offense shown by the record is theft from the person and not robbery.

The judgment is reversed and the cause remanded.

DISSENTING OPINION

WOODLEY, Presiding Judge, (dissenting).

I respectfully dissent for the reasons stated in my dissent in Curtis Lee Adams v. State, No. 33,771, this day decided. 354 S.W. 2d 147.

ON STATE'S MOTION FOR REHEARING

MORRISON, Judge.

Reconsideration of a companion case (Curtis Lee Adams, No. 33,771), has brought the writer to the conclusion that the offense here shown is also robbery. Lona testified that "Hester said he had a pistol." Viewed in the light most favorable to the State, such statement was made at the time of the commission of the offense. This, coupled with the acts of appellant and his companions in "herding" the women so as to prevent their flight from the scene, constituted such threatened violence as would support a conviction for robbery.

In our original opinion, we did not deem it necessary to discuss Appellant's Bill of Exception No. 1. Such now becomes obligatory, and, as I view it, reversible error is reflected thereby.

Therein it is shown that, while the jury were deliberating, the foreman came to the door and had a private conversation with the judge outside the hearing of appellant or his counsel. At the conclusion of this conversation, the judge then approached appellant and his counsel and informed them that the foreman had asked if the defendant would be given credit for his jail time and that he had assured him such credit would be granted if defendant accepted such sentence as the jury assessed.

This is not a case involving written instructions as required by the statutes and where the judge's answer is definitely known. The court here clearly violated the terms of Articles 676, 677 and 679, V.A.C.C.P., and orally instructed the jury what he would do in order to ameliorate any punishment they might assess if they found the accused guilty. In other words, he told them that Article 768, V.A.C.C.P., gave him the power to allow such credit and that he would exercise such authority favorably to the accused. To uphold the action of the court in this case would be in violation of the rule announced in White v. State, 149 Tex. Cr. Rep. 419, 195 S.W. 2d 141, and tantamount to saying that he might privately tell the jury that he would parole the accused if they found him guilty.

My brother McDonald is convinced of the soundness of the original opinion which he prepared for the court, and, for that reason, concludes that the case must be reversed.

Accordingly, since two judges of this court conclude that this case should be reversed, the state's motion for rehearing is overruled.

McDONALD, Judge, (Concurring).

I do not agree to the disposition of this case on the state's motion for rehearing. I think the case was correctly disposed of in the original opinion.

It is my thought that appellant's bill of exception No. 1 reflects no harmful error. In writing on this case originally, while I did not state it in the opinion, I felt and still feel that appellant's complaint as to the court's communication with the jury foreman reflects harmless error and comes squarely within the rule announced by Judge Graves in Choiniere v. State, 150 Tex. Cr. Rep. 582, 202 S.W. 2d 840.

I would deny the state's motion without written opinion.

ON STATE'S MOTION FOR REHEARING

WOODLEY, Presiding Judge, (dissenting).

The majority concur in the reversal of the conviction and overrule the state's motion for rehearing, Judge McDonald holding that the offense shown by the record is theft from the person and not robbery. Neither Judge Morrison nor the writer agreed.

Judge Morrison concurs in the reversal upon his conclusion that appellant's Bill of Exception No. 1 requires reversal.

It is the view of the writer that Bill of Exception No. 1 as qualified by the trial judge does not show reversible error. Judge McDonald agrees with this view.

Bill of Exception No. 1 was qualified by the trial judge to show that the communication with the jury foreman was with full knowledge and acquiescence of appellant and his counsel *in open court,* appellant and his counsel being present, and that no objection was made or exception taken prior to the motion for new trial.

The bill of exception does not affirmatively reflect that the jury had not agreed upon the punishment to be assessed and no evidence relating to the incident was presented at the hearing on appellant's motion for new trial.

I would grant the state's motion.